**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                              No. CR 22-0634 JB

GARY COCA,

        Defendant,

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Formal Objection to the Presentence Investigative Report, filed September 24, 2025 (Doc. 363)("Objection"). The sentencing is scheduled for March 27, 2026. The primary issue is whether the Court should sustain Defendant Gary Coca's Objection regarding his base offense level of 43 pursuant to U.S.S.G. § 2A1.1, because his actions do not constitute first-degree murder. The Court overrules Coca's Objection, because there is evidence to find, by a preponderance, that Coca's actions underlying the offense of Retaliating Against of a Witness, Victim and Informant, in violation of 18 U.S.C. § 1513(a)(1)(B) and 18 U.S.C. § 2, constitutes first-degree murder, and, therefore, a base offense level of 43 is proper.

**FACTUAL BACKGROUND**

Coca does not object to the facts in the PSR, but only to the legal interpretation of the facts as constituting first-degree murder. See Objections at 2 ("Mr. Coca does not object to the recitation of the facts"). Those undisputed facts are the Court's finding of fact. See Fed. R. Crim. P. (i)(3)(A)("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").

On May 24, 2018, the Federal Bureau of Investigation ("FBI") speaks with former Syndicate of New Mexico ("SNM") leader Leroy Lucero regarding witness intimidation. See PSR ¶ 26, at 8. Lucero serves as an FBI informant and Plaintiff United States of America witness, playing a large role in many SNM members' convictions following a 2015 FBI investigation. See PSR ¶¶ 24-26, at 8. Lucero's testimony is a significant factor in several SNM members' convictions. See PSR ¶ 26, at 8. During this May 24, 2018 conversation, Lucero tells the FBI that, on the previous night, Lucero's neighbor observes a white car parked down the street with two men inside of it, where one of the men exits the vehicle. See PSR ¶ 27, at 8. Lucero states that similar activity has occurred in the past, but that he has not reported this activity to law enforcement. See PSR ¶ 27, at 8.

On May 24, 2018, an unknown individual kicks the front door of Lucero's home at approximately 3:00 a.m. See PSR ¶ 27, at 8. On May 25, 2018, FBI agents meet with Lucero to discuss harassing telephone calls that he receives. See PSR ¶ 27, at 8. Lucero tells the FBI an unknown caller speaks to his wife and asks if she is scared. See PSR ¶ 27, at 8. Lucero also tells the FBI that he believes that the unknown caller knows the family's schedule. See PSR ¶ 27, at 8. On June 30, 2018, the FBI speak with Lucero and his wife regarding a call from an unknown female who states that she knows two people who want to "take them out." PSR ¶ 28, at 8. On the same day, an unknown male arrives at Lucero's residence and asks Lucero's wife for Lucero. See PSR ¶ 28, at 8.

On July 22, 2019, police in Las Vegas, New Mexico are dispatched to Lucero's home after reports that he has been shot multiple times. See PSR ¶ 29, at 8. Upon arrival, the police observe two gunshot wounds on Lucero's right upper chest and right forearm. See PSR ¶ 29, at 8. Paramedics and firefighters arrive on scene, and attempt to render aid to Lucero. See PSR ¶ 29, at

-2-

8.  Lucero, however, dies of his wounds on scene.  See PSR ¶ 29, at 8.  The Office of the Medical Investigator issues a Death Investigation summary and lists the manner of death as "homicide."  See PSR ¶ 31, at 9.

On July 22, 2019, police interview Lucero's wife, who states that she and Lucero are in their living room when she hears a car horn honking from outside their home.  See PSR ¶ 30, at 9.  Lucero's wife states that Lucero goes outside to see what is happening and she hears a gunshot shortly after Lucero exits.  See PSR ¶ 30, at 9.  Lucero's wife states that Lucero tells her to call the police, and she then runs inside to grab a telephone.  See PSR ¶ 30, at 9.  Lucero's wife hears a second gunshot and runs back outside to see a black vehicle driving away at high speed.  See PSR ¶ 30, at 9.  While police are on scene, Lucero's wife informs them that she receives information that Coca is one of the men who shoots Lucero.  See PSR ¶ 30, at 9.  In the days following Lucero's death, police interview witnesses and various confidential human sources ("CHS"); a CHS reveals that Robert Padilla is involved in the killing of Lucero.  See PSR ¶ 32, at 9.  On July 29, 2019, officers respond to a call from a suspicious person during which Coca flees on foot, abandoning his vehicle.  See PSR ¶ 33, at 9.

At approximately 6:30 p.m. on August 7, 2019, two subjects walk into a Lowe's Home Improvement store in Albuquerque, New Mexico, take merchandise, and attempt to depart without paying for the items.  See PSR ¶ 13, at 6.  A store employee confronts the subjects about the stolen merchandise, and the female subject pulls a handgun on the employee.  See PSR ¶ 13, at 6. The two subjects escape and drive away in a vehicle that police later confirm to be stolen.  See PSR ¶ 13, at 6.  Police interrogate the victim employee who recalls the incident clearly.  See PSR ¶ 14, at 6. The victim states that the subjects -- male and female -- approach him at a counter with the stolen merchandise before the male promptly exits the store.  See PSR ¶ 14, at 6.  The female walks

up to the victim and states, "What was that, fool?" while pointing a handgun at the victim's face. PSR ¶ 14, at 6. The victim follows the female's directions and reports the gun is approximately three to six inches from his face. See PSR ¶ 14, at 6. The female then departs the store. See PSR ¶ 14, at 6. According to the store manager, the merchandise is worth $1,200.00 to $1,500.00. See PSR ¶ 14, at 6. Police review the incident's video surveillance, and identify the subjects as Gary Coca and Chantel Martinez. See PSR ¶ 14, at 6.

On August 14, 2019, officers with the Sandia Police Department, from Sandia Pueblo, New Mexico, encounter Coca at a travel center, where they recover multiple items from the vehicle that Coca is driving, including the items from Lowe's. See PSR ¶ 15, at 6. Sandia police arrest Coca that day. See PSR ¶ 33, at 9. On September 5, 2019, the FBI interviews Coca, who states that the gun which he uses in the Lowe's Home incident is a BB gun, and that he has plans to sell the stolen merchandise to buy drugs. See PSR ¶ 16, at 6.

On August 15, 2019, New Mexico State Police investigators interview Gary Coca while he is in custody. See PSR ¶ 34, at 9. During the interview, Coca admits knowing Lucero since childhood and states that there is no ill-will between them. See PSR ¶ 34, at 9. Coca denies involvement in the killing of Lucero. See PSR ¶ 34, at 9. Coca hesitates to say that he has any relationship with Padilla, but eventually states that he has known Padilla since he was young. See PSR ¶ 34, at 9.

During a September 5, 2019 FBI interview with Coca, Coca states that, on the night of Lucero's death, he and Padilla are driving in Padilla's car when Padilla tells Coca to go to Lucero's residence. See PSR ¶ 35, at 9. After arriving at the house, Padilla reaches over and honks the car's horn. See PSR ¶ 35, at 9. Lucero comes out of his house and walks to the car's passenger side where Padilla is seated. See PSR ¶ 35, at 9. Padilla asks Lucero about the money that Lucero

owes to him and attempts to shoot Lucero.  See PSR ¶ 35, at 9.  The gun jams, however, and does not fire.  See PSR ¶ 35, at 9.  For the following portion of the facts, the Court relies on Coca's trial testimony, which Coca gives under oath at Padilla's trial on December 6, 2023.  The Court watches Coca testify, finds his testimony credible, and the jury convicts Padilla based in part on Coca's testimony.  Accordingly, the Court determines by a preponderance of the evidence that the following facts are true.  After the gun fails to fire, Padilla then throws the gun to Coca and directs Coca to "fix it."  See Padilla Trial Day 3 Tr. at 581:12-15, filed January 15, 2025 (Coca)("Tr.").  Coca explains that he believes this is a direction from Padilla to get the gun and shoot Lucero.  See Tr. at 581:17-19 (Coca).  Coca looks at the gun, and discovers that it is not jammed, but instead that the gun doesn't have a bullet in the chamber.  See Tr. at 581:21-24 (Coca).  Coca then loads the weapon, points it out the window at Lucero, and shoots.  See Tr. at 582:3-16 (Coca).  Padilla then exits the vehicle and shoots Lucero again.  See PSR ¶ 35, at 9.  Padilla re-enters the vehicle, and Coca and Padilla depart.  See PSR ¶ 35, at 9-10.

On August 26, 2022, the FBI interviews another CHS who advises them that Padilla has mentioned killing an FBI informant in the past. See PSR ¶ 38, at 10.  On January 10, 2023, the FBI interviews another CHS who advises them that Padilla tells the CHS that he killed Lucero because he is a "rat." See PSR ¶ 39, at 10.  The CHS tells the FBI that Padilla also states two men, his cousin Marcos and Coca, help him kill Lucero.  See PSR ¶ 39, at 10.

## **PROCEDURAL BACKGROUND**

On October 21, 2020, the Grand Jury files an Indictment in United States v. Coca et al., No. CR 20-1924, in the United States District Court for the District of New Mexico, charging the Defendants, Coca and Martinez as follows: "Count 1: Interference with Commerce by Threats or Violence; Aiding and Abetting. The offense occurred on August 7, 2019, in Bernalillo County."

PSR ¶ 1, at 4.  On April 19, 2023, the Grand Jury files a Third Superseding Indictment in United States v. Padilla et al., No. CR 22-0634, in the United States District Court for the District of New Mexico, charging the Defendants, Padilla and Coca as follows: "Count 2: Retaliating Against a Witness, Victim, and Informant and Aiding and Abetting, which occurred on or about July 22, 20219 in San Miguel County." PSR ¶ 2, at 4.  On November 6, 2023, Coca pleads guilty to Count 1 of the Indictment in United States v. Coca et al., and Count 2 of the Third Superseding Indictment in United States v. Padilla et al. See PSR ¶ 3, at 5. Count 1 charges Interference with Commerce by Threats or Violence; Aiding or Abetting, in violation of 18 U.S.C. § 2. See PSR ¶ 3, at 5. Count 2 charges Retaliating Against a Witness, Victim, and Informant; Aiding and Abetting, in violation of 18 U.S.C. § 1513(a)(1)(B) and 18 U.S.C. § 2. See PSR ¶ 3, at 5.

On March 5, 2024, the United State Probation Office ("USPO") files the PSR (Doc. 278), which applies an adjusted offense level of 26 for Count 1 and a base offense level of 43 for Count 2.  See PSR ¶¶ 57-58, at 12.  The PSR applies a total offense level of 40 to both Count 1 and Count 2 following a multiple count adjustment.  See PSR ¶ 71, at 13.

On September 24, 2025, Coca files the Objection, which makes one Objection to the PSR. Coca's Objection is that his starting base offense level of 43 is improper, because his participation in the murder of Lucero does not constitute first-degree murder.  See Objections at 3.  Coca argues that he does not commit first-degree murder, because he does not act with premeditation. See Objections at 3. Coca relies on the Tenth Circuit Patten Jury Instructions for first-degree murder to support his argument. See Objections at 3. Coca asserts that he does not premediate the murder and has no interest in killing Lucero. See Objections at 3. Rather, Coca argues that Padilla is the one who premeditates Lucero's killing. See Objections at 3. Coca objects to PSR ¶ 58, at 12,

therefore, and argues that his base offense level should be 38 pursuant to U.S.S.G. § 2A1.2 for second-degree murder. See Objections at 4.

On December 4, 2025, the USPO files an Addendum to the Presentence Report, (Doc. 3739("Addendum"). Addendum at 1. The Addendum addresses Coca's objection to his base offense level and maintains the position that, given Coca's plea agreement and his admission of facts, his actions constitute first-degree murder, and the offense level is proper.  See Addendum at 2.

On March 15, 2026, the United States files the United States' Response to Defendant's Formal Objection to Presentence Investigation Report, filed March 15, 2026 (Doc. 407)("Response").  First, the United States asserts that the Court should use New Mexico's jury instructions and not the Tenth Circuit Patten Jury Instructions, because the Third Superseding Indictment charges murder in violation of New Mexico State law.  See Response at 2.  Under New Mexico's UJI for first-degree murder, the killing must be the result of deliberate intent. See UJI 14-201 NMRA. The United States argues that Coca makes a momentary decision to deliberately kill Lucero, after Coca, following the direction of Padilla, takes the malfunctioning firearm, makes it operational, aims it towards Lucero, and shoots Lucero. See Response at 4. The United States maintains that there is sufficient evidence that Coca recognized Padilla's desire to kill Lucero, has awareness of the consequences of the decision before him, and implements the decision by shooting Lucero. See Response at 4.  Hence, the United States argues that the base level offense in the PSR of 43 is proper.  See Response at 4.

## ANALYSIS

The Court overrules Coca's Objection.  The Court overrules Coca's Objection to his base offense level, because the Court determines that, by a preponderance of the evidence, Coca's

actions constitute first-degree murder.  Coca acts with both malice aforethought and premeditation, establishing a base offense level of 43 under U.S.S.G. § 2A1.1.

## I.        THE COURT OVERRULES COCA'S OBJECTION TO PSR ¶ 58, AT 12.

Coca pleads guilty to Retaliation Against a Witness, Victim, and Informant in violation of 18 U.S.C. § 1513.  See PSR ¶ 3, at 5.  For anyone in violation of 18 U.S.C. § 1513 (a)(1), 18 U.S.C. § 1111 and § 1112 provides the punishment for a killing.  18 U.S.C. § 1513 (2)(a).  Section 1111 is the applicable statute for both first-degree and second-degree murder.  The pertinent part of 18 U.S.C. § 1111(a) provides:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

18 U.S.C. § 1111(a).  While both offenses are in § Section 1111, the United States Sentencing Guidelines prescribes different base offense levels for each offense. Under U.S.S.G. § 2A1.1, first-degree murder yields a base offense level of 43, while under U.S.S.G. § 2A1.2, second-degree murder yields a base offense level of 38.  The guideline under the provision for first-degree murder applies in cases of premeditated killing.  See Application Note 1 U.S.S.G. § 2A1.1.

The United States argues that it is more appropriate to "focus on the State of New Mexico Uniform Jury Instruction (UJI) for the requisite mens rea for first degree murder since that was the statute relied upon as part of the indictment in this and other SNM-related prosecutions." Response

at 1.  The Third Superseding Indictment charges Padilla, Coca's co-defendant in No. CR 22-0634, with Count 1, Lucero's murder, which states: "The SNM gang enterprise, through its members and associates, engaged in racketeering activity . . . acts and threats involving murder, robbery, and extortion in violation of New Mexico law," and charges Padilla with the murder of Lucero "in violation of NMSA 1978, Sections 30-2-1 and 30-1-13."  Third Superseding Indictment, at 7-8, filed April 19, 2023 (Doc. 79).  Count 1 does not charge Coca; instead, Count 2 charges Coca, and it is the Count for Retaliation Against a Witness, Victim, and Informant, in violation of 18 U.S.C. § 1513(a)(1)(B) and 18 U.S.C. § 2.  See Third Superseding Indictment, at 8.  As explained above, § 1513 provides a punishment scheme which references murder under federal law.  See 18 U.S.C. § 1513(a)(1) ("Whoever kills or attempts to kill another person with intent to retaliate against any person for . . . shall be punished as provided in paragraph (2).");  18 U.S.C. § 1513(a)(2) (stating that "in the case of a killing, the punishment provided in sections 1111 [Murder] and 1112 [Manslaughter]").  The Court accordingly determines that federal law is the appropriate law to determine whether first-degree murder is the applicable law to follow in this case.

The Tenth Circuit allows the Court to use the Guideline for first-degree murder, U.S.S.G. § 2A1.1, as the most analogous offense in two situations: (i) where "evidence presented at trial or an evidentiary hearing demonstrates by a preponderance of the evidence that the defendant harbored malice aforethought and premeditation"; or (ii) if the "offense of conviction could serve as a predicate to the felony murder rule found in 18 U.S.C. § 1111(a)." United States v. Fortier, 180 F.3d 1217, 1226 (10th Cir. 1999)(citing United States v. Nichols, 169 F.3d 1255, 1272-76 (10th Cir. 1999)). The Court focuses on the first situation, as it is the only applicable one. The Tenth Circuit requires a preponderance of the evidence establishing the defendant causes the victim's death with malice aforethought and premeditation for sentencing of federal first-degree

murder. See United States v. Troup, 426 F. Supp. 3d 1072, 1129 (D.N.M. 2019)(Browning, J.); Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 2.52, at 167 (2025)(**FIRST DEGREE MURDER 18 U.S.C. § 1111)**. Preponderance of the evidence is the appropriate burden of proof for this case, because the Court is determining whether underlying activity constitutes first-degree murder for sentencing purposes. The Court is making this determination to apply the Guidelines properly, and not increasing Coca's statutory sentence. See, e.g., United States v. Troup, 426 F. Supp. 3d 1072, 1126 (D.N.M. 2019).

Killing "with malice aforethought" means "to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life." Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 2.52, at 167 (2025)(**FIRST DEGREE MURDER 18 U.S.C. § 1111)**. The Court may consider "the use of a weapon or instrument, and the manner in which death was caused" in determining if "the killing was with malice aforethought." Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 2.52, at 167 (2025)(**FIRST DEGREE MURDER 18 U.S.C. § 1111)**. "[E]vidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm" may establish malice aforethought. United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(internal quotation marks omitted)(quoting United States v. Soundingsides, 820 F.2d 1232, 1237 (10th Cir. 1987)). Premeditation "is the result of planning or deliberation"; it must be enough time "for the killer, after forming the intent to kill, to be fully conscious of that intent." Criminal Pattern Jury

Instruction Committee of the United States Court of Appeals for the Tenth Circuit, **CRIMINAL PATTERN JURY INSTRUCTIONS** 2.52, at 167 (2025)(**FIRST DEGREE MURDER 18 U.S.C. § 1111)**.

Coca's Objection focuses on his supposed lack of premeditation for the murder. The Court analyzes both elements of malice aforethought and premeditation, however, in determining whether Coca's shooting of Lucero rises to the level of first degree murder. The Court begins by concluding that a preponderance of the evidence establishes that Coca acts with malice aforethought. First, at Padilla's trial, Coca testifies that after he witnesses Padilla attempt to shoot Lucero, Padilla hands him the gun and Coca assumes that "he's [Padilla's] telling me to fix the gun and shoot him." Tr. at 581:17-19, (Coca). Coca then states that he does what Padilla directs him to do, makes the gun operable, and shoots Lucero. See Tr. at 581:21-24 (Coca). While the moment is brief, Coca makes the deliberate choice to cock the gun, aim it at Lucero, and fire. Additionally, Coca admits during the trial that he aims the gun at the middle of Lucero's body, rather than at a non-vital body part or away from Lucero. See Tr. at 616:5-7 (Coca). Coca then hands the gun back to Padilla, knowing Padilla has just attempted to shoot Lucero and is likely going to shoot him again. By Coca making the gun operable, aiming and shooting the gun at the center of Lucero's body establishes that Coca acts with malice aforethought. Coca deliberately intends to shoot Lucero and is also aware of the high likelihood that Padilla is going to shoot Lucero again after receiving the gun. The Court therefore concludes, by a preponderance of the evidence, that Coca acts deliberately and intentionally to shoot Lucero, which establishes malice aforethought. See United States v. Wood, 207 F.3d at 1288 (quoting United States v. Soundingsides, 820 F.2d at 1237).

The Court also concludes by a preponderance of the evidence that Coca acts with premeditation. Coca maintains that he does not want to kill Lucero and harbors no ill-will toward Lucero. See PSR ¶ 34, at 9. The evidence indicates, however, that Coca is aware of Padilla's intention to kill Lucero, and willfully drives Padilla to Coca's residence. At Padilla's trial, Coca testifies that he knows of Padilla's intention and desire to kill Lucero. See Tr. at 591:1-2 (Coca). Additionally, Coca testifies that others were aware Padilla wanted to kill Lucero, because Padilla had been telling others. See Tr. at 592:20-25 (Coca). Most importantly, however, the Court determines that Coca premeditates the murder when Padilla hands Coca the gun and directs him to fix it. See Tr. at 581:17-19 (Coca). Coca must spend time fixing the gun and making it operable; during this time he has the opportunity to reflect on the fact that he is about to shoot Lucero, and commit to this intention, before he pulls the trigger. The Court determines that this moment for self-reflection allowed Coca to become conscious of his intent to kill, which is all that is required for premeditation. See Hickory v. United States, 151 U.S. 303, 314 (1894)("premeditation may exist in the twinkling of an eye."). Accordingly, the Court concludes that Coca premeditates the killing of Lucero.

Even if New Mexico law is the appropriate law to assess the first-degree murder cross reference, the Court determines that Coca commits first-degree murder under New Mexico law as well. First-degree murder under New Mexico law requires a deliberate killing, which the New Mexico Uniform Jury Instruction 14-201 defines as:

> The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill.

NM R CR UJI 14-201.  For similar reasons discussed above, the Court determines that Coca acts conducts a deliberate killing of Lucero.  When Padilla hands Coca the gun and directs Coca to fix it, Coca has to spend time handling the gun to make it operable.  It is during this time that the Court determines Coca is able to weigh both for and against the idea of killing Lucero, and when he raises the gun towards Lucero and pulls the trigger, Coca has made a calculated judgment to kill Lucero.  The Court concludes accordingly that under either federal or State law, Coca commits first-degree murder in the killing of Lucero, and, accordingly, the Court overrules Coca's Objection.  U.S.S.G. § 2A1.1 applies, and Coca's base offense level will remain at 43.

**IT IS ORDERED** that: (i) the Defendant Gary Coca's Objection to the Presentence Investigative Report, filed September 24, 2025 (Doc. 363) is overruled; (ii) the applicable offense level is 40; (iii) the applicable criminal history category is VI; (iv) the United States Sentencing Guidelines establish an imprisonment range of 360 months to life.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd Blanche
  Deputy Attorney General
Ryan Ellison
  First Assistant United States Attorney
Maria Armijo
Randy Castellano
  Assistant United States Attorney
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Jane Greek
Albuquerque, New Mexico

--and--

-14-

Jose R. Coronado
Jose R. Coronado Attorney at Law
Albuquerque, New Mexico

*Attorneys for the Defendant*